UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CURTIS COLEMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:14-CR-28-RLJ-MCLC |
| | ) | 2:15-CV-326-RLJ |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM and ORDER

On May 19, 2015, pursuant to his negotiated plea agreement, Curtis Coleman ("Petitioner") pled guilty to conspiracy to distribute 280 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) [Docs. 35, 39].[1] The Court accepted the guilty plea and referred the matter to the United States Probation Office for a Presentence Investigation Report ("PSR") [Doc. 56, sealed]. Agreeing with the probation officer's determination that Petitioner was a career offender under Section 4B1.1 of the United States Sentencing Guidelines [*Id.*], the Court sentenced him on August 20, 2015, to 150 months' imprisonment and five years' supervised release [Doc. 73]. Petitioner did not file a direct appeal, but almost four months later—on December 14, 2015—he brought a motion to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255 [Doc. 92], and four days later, a timely amended § 2255 motion that supplanted the original motion [Doc. 93].

The United States responded in opposition to Petitioner's § 2255 motion [Doc. 104], arguing that none of his claims provide any basis upon which relief may be granted. Petitioner's

---

[1] Citations to the record refer to the Petitioner's criminal case, No. 2:14-CR-28.

§ 2255 motion is ripe for review, but also ripe for review are two later motions filed by Petitioner—to which the Court turns first.

## I. MOTION TO AMEND

Petitioner has submitted a motion to amend his § 2255 motion [Doc. 126], his fourth such filing. Petitioner's previous motions to amend [Docs. 118-120], all seeking to assert a claim based on *Mathis v. United States*, 136 S. Ct. 2246 (2016), were denied as futile because *Mathis* does not apply retroactively on collateral review and because the claim was barred by § 2255(f)'s one-year statute of limitation [Doc. 121]. Likewise denied was Petitioner's request to reconsider the denial of his motions to amend [Docs. 122-123]. There followed the pending motion to amend, in which Petitioner's advances what the Court understands to be an equitable tolling argument to save his untimely *Mathis* claim [Doc. 126].

The one-year statute of limitations in AEDPA is not jurisdictional and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Holland,* 560 U.S. at 649). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *accord Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

Petitioner maintains that, following his sentencing, he was in transit, temporarily housed in various correctional facilities for a short periods of time, and did not have access to his legal paperwork for almost five months of the one-year period in which to file amendments to his motion to vacate. Petitioner asks the Court to consider that his proposed *Mathis*-based claim was only two months late. However, the Sixth Circuit has instructed that, "[a]bsent compelling equitable

considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted); *cf., Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003) (noting that the equitable tolling calculus focuses on more than one year and rejecting a petitioner's argument that his state court filing was one day late).

After reviewing the record, the Court finds no extraordinary circumstance. Petitioner submitted numerous, timely filings to the Court during the one-year period established in § 2255(f)(1) (providing that the one-year period begins to run upon conclusion of direct appeal). For example, Petitioner was able to file an original § 2255 motion and an amended § 2255 motion after the one-year clock for filing a motion to vacate had ticked, respectively, for 102 days and 106 days [Docs. 92-93]. On day 130 of § 2255(f)(1)'s one-year clock, following Petitioner's transfer to a federal prison in Manchester, Kentucky, he filed a notice that his address had changed [Doc. 102]. By the time the clock had run for 266 days, Petitioner had filed three more motions, including: (1) a motion for a sentence reduction, under 18 U.S.C. § 3582(c)(2) and Amendments 782 and 788 to the United States Sentencing Guidelines Manual [Doc. 103]; (2) a motion to amend his § 2255 motion [Doc. 107]; and (3) a motion for approval to correspond with his co-defendant [Doc. 111].

As the Court has previously held, the § 2255(f)(1) one-year period expired in Petitioner's case on September 3, 2016 [Doc. 121]. Despite Petitioner's many submissions, the record does not reflect that Petitioner sought to add a timely claim under the ruling in *Mathis*, although that decision was issued on June 23, 2016, and although he had until September 3, 2016, within which to file a timely § 2255 claim, in reliance on that decision. Indeed, it was not until 72 days after the lapse of § 2255(f)(1)'s one-year period that Petitioner notified the Court of his transfer from the federal prison in Manchester, Kentucky, to a federal medical center in Lexington, Kentucky [Doc.

116, Notice of Address Change, filed Nov. 14, 2016]. Thus, the record before the Court suggests that Petitioner remained incarcerated in the same federal prison from June 23rd to September 3rd of 2016, during which time he could have moved the Court for permission to add a *Mathis* claim.

The Court finds that Petitioner has failed to show an extraordinary circumstance and, accordingly, **DENIES** his motion to equitably toll § 2255(f)(1)'s limitations period [Doc. 126]. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (observing that "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule"); *see also Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 561 (6th Cir. 2000) ("Absent compelling equitable considerations, a court should not extend limitations by even a single day."); *Portman v. Wilson*, No. 10-CV-169-KSF, 2010 WL 4962922, at *2 (E.D. Ky. Dec. 1, 2010) ("It is well settled that . . . the frustrations of typical prison conditions that make prison-based litigation difficult, such as transfers [and] lack of access to copies and legal materials, do not constitute exceptional circumstances justifying equitable tolling.") (citing cases).

## II. MOTION TO RECONSIDER

Next, Petitioner moves the Court to reconsider its prior order denying his motion to reconsider the denial of his motions to amend his amended § 2255 motion [Doc. 129]. Petitioner recognizes that his motion is not "the proper procedure," but he, nonetheless, appeals to this Court's "humanity," suggesting that circumstances existing in his case (i.e., the short duration of his prior criminal conduct—spanning only 2-3 years, as well as his good deeds, accomplishments, and personal background, added to the five months of § 2255(f)(1)'s one-year limitations statute that were spent being transferred to different prisons) deserve to be considered in any time-bar determination [*Id.*].

4

The Federal Rules of Civil Procedure do not recognize motions to reconsider, *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979), but in this circuit, a court may view such a motion, if filed beyond the 28-day period authorized for filing a Rule 59(e) motion, as Rule 60(b) motion for relief from a judgment. *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998); *see also Kitts v. United States*, No. 2:11-CR-58-JRG-2, 2017 WL 5560173, at *2 (E.D. Tenn. Nov. 17, 2017) (citing *Feathers*, 141 F.3d at 268). It is proper to apply Rule 60(b) to § 2255 motions. *United States v. Gibson*, 424 F. App'x 461, 464 (6th Cir. 2011) (citing *Gonzales v. Crosby*, 545 U.S. 524, 529 (2005), and *In re Nailor*, 487 F.3d 1018, 1021(6th Cir. 2007)).

Rule 60(b) permits a district court to grant relief from a final judgment for several reasons, such as mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, misrepresentation, misconduct, a void judgment, or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)-(b)(6). A Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez*, 545 U.S. at 532.

In the order from which Petitioner requests relief, the Court denied his Rule 59(e) motion to alter or amend judgment (as construed) [Doc. 123]. The Court has reviewed the challenged order and is convinced that it thoroughly addressed each argument presented by Petitioner, correctly applied the relevant procedural rules and substantive law, and reasonably rejected his Rule 59(e) motion [*Id.*]. More important, Petitioner has not alleged any of the specific reasons that would justify relief under Rule 60(b)(1)-(b)(5).

To the extent that Petitioner's motion is based on Rule (60)(b)(6) (predicating relief on "any other reason that justifies relief"), then *Gonzalez* requires "a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."

*Gonzales*, 545 U.S. at 535 (citations omitted). None of Petitioner's arguments as to his good deeds, personal background, achievements, or the brevity of the period of his criminal escapades, as iterated in his Rule 60(b) motion, constitutes an extraordinary circumstance. *Id.* at 535 (explaining that extraordinary circumstances "rarely occur in the habeas context"). The circumstances presented by Petitioner, though commendable, are run-of-the-mill circumstances in many cases involving federal criminal defendants. Furthermore, the Court has already addressed and rejected Petitioner's claim that his frequent transfers between prisons for five months of the one-year limitations period justifies equitable tolling. *See Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (noting the existence of equitable principles underlying Rule 60(b)(6)).

Based on the above reasoning, Petitioner's Rule 60(b) motion, as construed [Doc. 129] is **DENIED**.

### III. MOTION TO VACATE

The last motion is Petitioner's amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 93]. The United States responded in opposition [Doc. 104]. Petitioner did not file a reply to the Government's response. For the reasons discussed below, all claims in Petitioner's § 2255 motion, save one, will be **DISMISSED** and that single claim will proceed to an evidentiary hearing.

#### A. BACKGROUND

The stipulated facts contained in Petitioner's signed plea agreement supply the factual backdrop for his cocaine conspiracy offense [Doc. 35, Plea Agreement, ¶ 4].

In the Eastern District of Tennessee, beginning in January of 2013, Petitioner participated in a large-scale drug trafficking organization that distributed cocaine base ("crack) [*Id.*]. Agents of the Second Judicial District Drug Task Force ("DFT") and the Sullivan County Sheriff's

6

Department ("SCDC") vice unit in Sullivan County, Tennessee, conducted an undercover operation investigating that criminal venture [*Id.*]. Two controlled buys were arranged with Petitioner through a confidential source ("C/S") [*Id.*].

The first buy occurred on April 6, 2013, pursuant to the C/S's arrangement with Petitioner to purchase one ounce of crack cocaine for $1,400 [*Id.*]. Petitioner stated that he would send his girlfriend, co-defendant Jessica Clark, to accomplish the drug transaction [*Id.*]. The C/S was searched, equipped with monitoring devices and a wire to record the transaction electronically, and given $1,400 in photocopied U.S. currency to pay for the drugs [*Id.*]. The C/S, accompanied by an undercover DFT agent, met Ms. Clark at a mall, tendered to her the payment for the drugs, and then crossed the street to Big Lots, where the C/S entered Ms. Clark's vehicle and obtained the crack cocaine from her [*Id.*].

The second buy took place on July 8, 2013, when a C/S orchestrated a purchase of crack cocaine from Petitioner and an out-of-town source, known as "Heavy D," who later was identified as co-defendant Garland Thomas, Jr., [*Id.*]. Once again, the C/S was searched, outfitted with monitoring and recording devices, given a sum of money ($700) in photocopied U.S. Currency to consummate the drug purchase, and directed to go to the Red Roof Inn [*Id.*]. An undercover Bureau of Alcohol Tobacco and Firearms ("ATF") agent drove the C/S to the motel [*Id.*]. Petitioner arrived at the motel in a car driven by Mindy Clark [*Id.*]. Petitioner and the C/S entered a room in the motel, met with Thomas, and the C/S handed over the money, receiving in exchange what was later determined to be 13.96 grams of crack cocaine [*Id.*].

Meanwhile, on June 14, 2013, ATF and DTF agents interviewed Damien Buxton. Buxton told the agents that he had begun traveling to Kingsport, Tennessee in 2012, where he delivered crack cocaine to Petitioner and others [*Id.*]. In September through November of 2012, Buxton

increased his trips to Kingsport and, by January of 2013, through May of 2013, was bringing from six to seven ounces—sometimes seven to fourteen ounces—nearly bimonthly, with Petitioner buying about one-fifth of the total crack cocaine [*Id.*]. Buxton related that he carried about nine ounces of crack cocaine with him during his last trip to Kingsport and that he sold two ounces to Petitioner on that occasion.

Petitioner admitted that he conspired with at least one other person to distribute crack cocaine [*Id.*]. Petitioner stipulated that, conservatively, he conspired to distribute at least 280 grams but less than 840 grams of crack cocaine [*Id.*]. Petitioner also stipulated that he was subject to a mandatory minimum sentence of ten years' confinement and that he could receive up to a life term [*Id.,* ¶¶ 1, 6(a)]. Thirteen days later, on May 19, 2015, Petitioner pled guilty to the cocaine conspiracy offense, and the Court accepted his plea [Doc. 39].

Using the drug quantity stipulated in the plea agreement, the probation officer who prepared the PSR noted that Petitioner's base offense level was thirty [PSR ¶ 19]. The probation officer determined that Petitioner's offense level should be enhanced to a level thirty-seven, based on Petitioner's career offender designation under § 4B1.1 of the Guidelines [PSR ¶ 25]. The probation officer found the increase warranted by virtue of Petitioner's 2009 prior cocaine-related convictions [PSR ¶¶ 34-35, 38]. A three-level reduction for acceptance of responsibility yielded a total offense level of thirty-four, which along with the highest criminal history category of VI (required by Petitioner's career offender designation), resulted in an advisory Guidelines range of 262-327 months [PSR ¶¶ 26-28, 42, 58].

Petitioner did not object to the PSR, and on August 20, 2015, the Court granted his motion for a variance [Doc. 64] and sentenced him to one hundred fifty months' imprisonment and to five

years' supervised release [Doc. 70]. Petitioner did not file a direct appeal. Instead, he submitted this pro se amended § 2255 motion to vacate [Doc. 93].

**B.    STANDARD OF REVIEW**

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

**C.    DISCUSSION**

Petitioner's amended § 2255 motion asserts that his counsel provided ineffective assistance by failing to object to this career offender enhancement and to file a requested appeal; that the career offender enhancement to his sentence was unlawful; and that a retroactive change in the Guidelines allows him a two-level reduction in his offense level [Doc. 93].[2]

Under Rule 8 of the Rules Governing § 2255 Proceedings in United States District Courts, the Court must determine, based on a review of the answer and the record, whether an evidentiary hearing is required. *Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015). A petitioner's burden in this regard is relatively light, but more is required than protestations of innocence. *Valentine v.*

---

[2] The only difference that the Court can discern between the original and amended § 2255 motions is that the amended motion [Doc. 93] bears a notary public seal and notary signature at the bottom of the last page, whereas the original motion [Doc. 92], has no such seal or signature.

*United States*, 488 F.3d 325, 334 (6th Cir. 2007). In this case, there is a material factual dispute regarding Petitioner's second ineffective assistance claim—that counsel failed to file an appeal that Petitioner requested he file.

Petitioner asserts in his amended § 2255 motion that he requested counsel to file an appeal and has sworn under penalty of perjury to the truth of that assertion [Doc. 93 at ¶ 12(A) and p.6]. The United States has submitted counsel's affidavit in which counsel states that, to the best of his knowledge, Petitioner never asked him to file an appeal on his behalf within the period for doing so [Doc. 104-1, Affidavit of Eric D. Reach, Esq.]. Because this factual disagreement cannot be resolved without an evidentiary hearing, the Court will appoint counsel and refer this single claim to the magistrate judge for an evidentiary hearing. *See e.g., Pola*, 778 F.3d at 534 (noting an evidentiary hearing would be required where a petitioner's and counsel's affidavits directly contradicted each other regarding whether petitioner had requested counsel to file a notice of appeal); *see also Valentine v. United States*, 488 F.3d 325 (6th. Cir. 2006) (finding that a hearing is mandatory in a § 2255 proceeding when a factual dispute arises).

   **1.**  **Ineffective Assistance**

The governing law and the record in this case permits the Court to resolve Petitioner's remaining ineffective-assistance claim, i.e., that counsel did not object when Petitioner was sentenced unlawfully as a career offender because all his predicate prior convictions were related and consolidated at the plea and sentencing stage [Doc. 93 at 4].

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional

norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). A court must presume that counsel's assistance was effective, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (instructing reviewing courts to "remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'") (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 (directing that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. To show prejudice in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697. A failure to object to an improper application of the Sentencing Guidelines may amount to ineffective assistance of counsel. *Arredondo v. United States*, 178 F.3d 778, 783-788 (6th Cir. 1999).

United States Sentencing Guidelines § 4B1.1 provides the criteria for determining whether a defendant qualifies as a career offender:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG 4B1.1(a). As used in this section, the term "two prior felony convictions" means that:

> the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense . . ., and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provision of § 4A1.1(a), (b), or (c).

USSG § 4B1.2(c).

Under the career offender guideline, "[t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance . . . with intent to . . . distribute or dispense." USSG § 4B1.2(b). Prior sentences imposed in unrelated cases are to be counted separately: "Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." USSG § 4A1.2(a)(2). "If there is no intervening arrest, prior sentence are counted separately unless . . . (B) the sentences were imposed on the same day." USSG § 4A1.2(a)(2)(B).

Under § 4B1.2, Petitioner's prior convictions are counted separately because they were separated by intervening arrests. More specifically, Petitioner committed the first controlled substance offense (possession of .5 grams or more of cocaine for resale) on December 19, 2007; he was arrested that same day [PSR ¶ 34]. Petitioner committed the second predicate offense (possession of .5 grams or more of cocaine for resale) on February 13, 2008, and was arrested the same day [PSR ¶ 35]. Petitioner committed the third predicate controlled substance offense (sale

12

of .5 grams or more of cocaine and delivery of .5 grams or more of a substance containing cocaine), on April 9, 2008 [PSR ¶ 38]. He was arrested some five months later, i.e., on September 8, 2008 [PSR ¶ 38].

To sum up, because Petitioner was arrested for the first controlled substance felony offense before commission of the second such offense and because he was arrested for the second controlled substance offense before commission of the third such offense, all three prior felony convictions were correctly counted as separate convictions under § 4A1.1(a). What is more, those sentences were imposed for conduct that was not part of his federal controlled substance offense and, thus, the conduct underlying those predicates was not relevant conduct. USSG § 4A1.2(a)(1).[3] Because Petitioner had at least two predicate offenses, separated by an intervening arrest, he correctly was classified as a career offender. *See United States v. Campbell,* 436 F. App'x 518, 2011 WL 3792374 (6th Cir. 2011) (concluding that convictions separated by an intervening arrest were properly considered and that "[o]nce the court determines that an intervening arrest separates two offenses, the analysis ends there" (quoting *United States v. Mosley,* 635 F.3d 859, 864–65 (6th Cir. 2011)); *cf., United States v. Davis*, 15 F.3d 526, 533 (6th Cir. 1994) (noting that offenses separated by an intervening arrest are not related under USSG § 4A1.2(a)(2)).

Counsel's performance is not deficient for failing to object to a proper application of the Guidelines. *See Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) (holding that counsel is not required to raise futile arguments on behalf of his client); *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) (attorney need not present argument for which no good-faith factual support exists to

---

[3] Relevant conduct includes "all acts . . . committed . . . by the defendant . . . that occurred during the commission of the offense of conviction . . . ." USSG § 1B1.3(a)(1).

avoid a charge of ineffective assistance) *United States v. Owenby*, No. 2:12-CR-118, 2017 WL 951698, at *8 (E.D. Tenn. Mar. 9, 2017) (finding that counsel's failure to object to PSR's conclusion that Defendant was not entitled to a reduction for his role in offense was not error where defendant did not play a minimal role in the offense); *cf. Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014) (observing that "an attorney's failure to object to an error in the PSR's calculation of the guidelines . . . can be grounds for finding deficient performance"). Nor does counsel's omission result in prejudice because making a baseless objection would have been futile. *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016) (concluding that "the failure to make futile objections does not constitute ineffective assistance" and does not result in prejudice); *see also Saulter v. United States*, No. 3:11-0825, 2012 WL 642762, at *3 (M.D. Tenn. Feb. 27, 2012) (determining that "the petitioner is unable to show prejudice since there were two prior predicate convictions sufficient to support a finding of career offender status").

Petitioner is not entitled to collateral relief on his claim of ineffective assistance

### 2. Career Offender

Petitioner next asserts the attorney error alleged above as an independent claim of sentencing error, i.e, that he did not qualify for career offender status because his prior convictions were consolidated for plea and sentencing in state court and, thus, they should have been counted as only one offense. First, the United States argues that Petitioner could have challenged his career offender designation on direct appeal, that he failed to do so, and that such a failure constitutes a procedural default [Doc. 104 at 6 n.2].

The Court agrees. Claims that were not raised on direct appeal when they could have been raised are procedurally defaulted; such claims may not be reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to excuse the failure to raise the claim previously or,

alternatively, actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622-23 (1998); *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). The "hurdle" that a petitioner faces to excuse procedural default is "intentionally high[,] . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

Petitioner did not raise this alleged sentencing error on direct appeal. *See United States v. Calderon*, 194 F.3d 1314 (6th Cir. 1999) (observing that "direct appeal would have been the correct form in which to raise sentencing questions"). Petitioner has not alleged either cause or prejudice, much less actual innocence, to surmount the procedural bar. Therefore, Petitioner's procedural default precludes federal review of his claim.

Even if the claim has not been procedurally defaulted, it lacks merit for the reasons set forth above: Petitioner had at least two predicate offenses, separated by an intervening arrest, and thus he was classified correctly as a career offender.

### 3. Retroactive Change in the Sentencing Guidelines

Petitioner claims that he is entitled to a two-level reduction in his offense level, pursuant to the November 1, 2015, amendment to the guidelines. The United States responds that Petitioner's claim is not recognizable in a § 2255 motion to vacate.

Amendment 782 to the United States Sentencing Guidelines (effective on November 1, 2014) reduced by two levels the offense levels assigned to the quantities of controlled substances in the Drug Quantity Table in 2D1.1(c). Amendment 788 made Amendment 782 retroactive, *United States v. Light*, 674 F. App'x 548, 549 (6th Cir. 2017), but delayed until November 1, 2015, the effective date for orders reducing an inmates' prison terms under Amendment 782. *United States v. Espinoza*, 92 F. Supp. 3d 1210, 1211 (M.D. Fla. 2015). Though not explicitly alleged in

15

the amended § 2255 motion, the Court assumes that Petitioner's claim seeking a two-level reduction in his offense level by virtue of a November 1, 2015, sentencing guidelines amendment rests on Amendments 782 and 788.

However, requests for sentence reductions based on Amendments 782 and 788 are to be made in a motion under 18 U.S.C. § 3582(c)(2), since that is the appropriate judicial remedy to obtain a sentence modification. *See United States v. Carter*, 500 F.3d 486, 490 (6th Cir. 2007) (explaining that "[w]hen a § 3582 motion requests the type of relief that § 3582 provides for - that is, when the motion argues that sentencing guidelines have been modified to change the applicable guidelines used in the defendant's sentencing - then the motion is rightly construed as a motion to amend sentencing pursuant to § 3582" and "when a motion titled as a § 3582 motion otherwise attacks the petitioner's underlying conviction or sentence, that is an attack on the merits of the case and should be construed as a § 2255 motion"); *Benstrom v. United States*, No. 2:12-CR-36-4, 2014 WL 5105984, at *2 (W.D. Mich. Oct. 10, 2014) (observing that a request for sentence modification under Amendment 782 should have been brought "as a motion pursuant to 18 U.S.C. § 3582(c)(2), not a section 2255 petition").

Petitioner's § 3582 request for a sentence reduction is not cognizable and will not be entertained in this § 2255 motion.[4]

## IV.  CONCLUSION

For the reasons discussed in this Order, Petitioner's motion to equitably toll § 2255(f)(1)'s limitations period [Doc. 126] is **DENIED**; his Rule 60(b) motion, as construed, [Doc. 129] is **DENIED**; and all claims he has asserted in this amended § 2255 motion, with one exception, [Doc.

---

[4] Indeed, Petitioner filed a separate § 3582(c)(2) motion [Doc. 103], but the Court found him ineligible for a sentence reduction and denied his § 3582(c)(2) motion [Doc. 106].

93], are **DISMISSED**. The claim that counsel rendered ineffective assistance by failing to pursue Petitioner's requested appeal cannot be resolved without an evidentiary hearing.

Therefore, that sole claim is **REFERRED** to Magistrate Judge Clifton L. Corker to conduct an evidentiary hearing, to appoint counsel to represent Petitioner at the hearing, and thereafter to issue a report and recommendation on whether Petitioner requested counsel to file an appeal that counsel thereafter failed to file. The magistrate judge is authorized to issue any other orders he deems necessary to effect the purpose of this order.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge