UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:14-CR-028 |
| | ) | |
| CURTIS COLEMAN | ) | |

## **MEMORANDUM AND ORDER**

Now before the Court is the defendant's renewed *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 157].[1] The United States has responded in opposition [docs. 159, 160], and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the motion will be denied.

### I. BACKGROUND

In August 2015, this Court sentenced the defendant to a below-guidelines term of 150 months' imprisonment for his role in a cocaine base distribution conspiracy.[2] The defendant is presently housed at FCI Yazoo City Low with a projected release date of July 19, 2026. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 12, 2021). He now moves for compassionate release due to hypertension, "at risk diabetes," and "liver or kidney failure." [Doc. 157]. His prior motions also cited the COVID-19 pandemic. [Doc. 152 ("I am writing seeking relief . . . in light of the Covid-19 pandemic.");

---

[1] Previous motions [docs. 152, 153] were denied for failure to exhaust administrative remedies. [Doc. 154].

[2] The Presentence Investigation Report ("PSR") correctly deemed the defendant a Career Offender under the sentencing guidelines, resulting in an advisory guideline range of 262 to 327 months. [Doc. 56, ¶¶ 42, 59]. The Court varied downward by 112 months, finding that the Career Offender range "is overly harsh for this street-level drug dealer." [Doc. 74].

Doc. 153 ("I am writing in hopes of being considered for home confinement or compassionate release due to Covid-19.")].

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned

2

to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and that more than 30 days have passed since that request was received by the warden. [Doc. 159, ex. 1].[4] The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites hypertension, "at risk diabetes," and "liver or kidney failure." Also, as noted, the defendant has repeatedly noted a fear of the COVID-19 virus in his prior filings.

At the defendant's correctional institution, there are currently zero inmates and zero staff positive for COVID-19, with 80 inmates and 14 staff having recovered, and three

---

[3] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

[4] Therein, the defendant cited his "fear [of] the second wave of the covid-19 virus because as we seen last time it will effect [sic] everyone on the units." [Doc. 159, ex. 1].

inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 12, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains on alert due to COVID diagnoses, hospitalizations, deaths, emerging variants, and grossly inadequate vaccination rates. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, the BOP's vaccination efforts are underway, with 360 staff and 1,933 inmates having been fully vaccinated at the defendant's correctional complex. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 12, 2021). Curiously, however, despite previously reporting a "fear [of] the second wave of the covid-19 virus because as we seen last time it will effect [sic] everyone on the units," on May 6, 2021, the defendant expressly refused to be vaccinated. [Doc. 160].

BOP medical records show that the defendant has been diagnosed with hypertension, for which he receives medical care and medication. [*Id.*]. He has also been diagnosed with high cholesterol and has been counseled to modify his diet. [*Id.*]. The record before the Court does not confirm diagnoses of diabetes, liver failure, or kidney failure. [*Id.*].

The Court also observes that the defendant is overweight. As of March 10, 2021, he weighed 203 pounds. [*Id.*]. According to the PSR, he is six feet tall. [Doc. 56, ¶ 50]. These numbers produce a body mass index ("BMI") of 27.5. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited July 12, 2021). Persons with a BMI of 30 or greater are considered obese, and persons with a BMI of at least 25 but less than 30 are deemed overweight. *Id.*

Being overweight can make one more likely to become severely ill if infected with COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 12, 2021). Hypertension can possibly also make one more likely to become severely ill from COVID-19. [*Id.*].

Nonetheless, the Court concludes that the defendant has not carried his burden of demonstrating extraordinary and compelling grounds for compassionate release. The defendant is receiving medical care from the BOP, and his cited medical conditions simply do not rise to the level of being "extraordinary and compelling." At a March 10, 2021 medical appointment, there was no "chest pain, angina, DOE, claudication, syncope, headaches, dizziness or visual changes. [Doc. 160]. There are currently no active cases of COVID-19 at the defendant's prison and, in any event, he has been offered a vaccine. Further, the BOP's SENTRY Report categorizes the defendant as Care Level 1. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12

months."   See   http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited July 12, 2021).

Alternatively, compassionate release in this case would not be consistent with the 18 U.S.C. § 3553(a) factors. Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The defendant's offense conduct in this case, paired with his criminal history, indicates that compassionate release is not warranted. For approximately half of 2013, the defendant "was involved in a large scale drug trafficking organization that was distributing cocaine base ("crack") within the Eastern District of Tennessee." [Doc. 56, ¶¶ 7-13]. He was "conservatively" held accountable for a substantial quantity of cocaine base in this case. [*Id.*, ¶¶ 14, 19]. There are four prior controlled substance convictions, three of which supported his Career Offender designation. [*Id.*, ¶¶ 33-35, 38]. There have been prior revocations of probation or parole, along with a conviction for failure to appear. [*Id.*, ¶¶

33-34, 37, 40].

There is a history of substance abuse [*id.*, ¶ 52], yet according to SENTRY the defendant has "no interest" in BOP drug programming. He has incurred one disciplinary sanction, for unauthorized transfer of money, during his current prison term. Lastly, more than five years remains on the sentence imposed by this Court, as sentence which was more than nine years below the bottom of the applicable guideline range. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

Compassionate release on these facts would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes. The pending motion must therefore be denied.

### III. CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release [doc. 157] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge